# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DAVINA JOHNSON,

        Plaintiff,

v.                                              Case No. 19-CV-983

KAREN BAUMHARDT,

        Defendant.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

Plaintiff Davina Johnson, who is incarcerated and representing herself, brings this lawsuit under 42 U.S.C. § 1983. (Docket # 2.) Johnson was allowed to proceed on an Eighth Amendment deliberate indifference to medical needs claim against defendant Nurse Karen Baumhardt for allegedly denying her emergency medical attention after a fall that occurred on October 14, 2014.

Baumhardt has moved for summary judgment on the basis that Johnson failed to exhaust her administrative remedies. (Docket # 35.) For the reasons stated below, I will deny Baumhardt's motion for summary judgment on exhaustion grounds.

## FACTS

*Underlying Claim*

Plaintiff Davina Johnson, who is confined at Taycheedah Correctional Institution, alleges that on October 7, 2014, she fell out of a top bunk and injured her knee. (Docket # 1 at 3.) After her fall, Johnson requested immediate medical attention, and defendant Nurse

Baumhardt examined her. (*Id.*) Baumhardt denied Johnson's request for an x-ray or an MRI, instead recommending ice and over-the-counter pain medicine. (*Id.*) For the next three weeks, Johnson repeatedly sought medical attention for her knee, which was continuing to swell. (*Id.*) However, each time Johnson was examined by Baumhardt, Baumhardt simply gave her more ice and Tylenol. (*Id.*)

Then, on October 22, 2014, Johnson saw psychologist Dr. Nancy Negratti, who helped Johnson communicate with the Health Services Unit (HSU) staff and get additional medical care. (ECF No. 44 at 6.) Johnson then received an MRI, which showed that her knee had a significant amount of fluid built up. (Docket # 1 at 3.) Ultimately, Johnson had surgery for a torn meniscus on February 5, 2015. (Docket # 44 at 7.) Then, at some point around November of 2018, Johnson learned that she would have painful long-term effects from her knee injury, including bone degeneration, that would require more surgery and result in a permanent "handicap." (Docket # 53, ¶ 10; Docket # 1 at 3-4.) She asserts that Baumhardt's delay in treatment caused these long-term effects. (*Id.*)

*Taycheedah's Grievance Procedure*

"An inmate may use the [Inmate Complaint Review System] (ICRS) to raise issues regarding policies, rules, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code § DOC 310.06(1). "Prior to filing a formal complaint, an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin. Code § DOC 310.07(1). Should informal resolution prove unsuccessful, an inmate then must "file a complaint within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code § DOC 310.07(2). Extensions may be given at the discretion of the Institution Complaint Examiner

2

(ICE) and upon a showing of good cause. *Id.* "An inmate shall submit a signed complaint by placing it in a receptacle designated for complaints or by submitting it to the ICE office through institution or USPS mail." Wis. Admin. Code § DOC 310.07(8). ICE "shall give written notice to the inmate within 10 days of collection that the complaint has been received." Wis. Admin. Code § DOC 310.10(4).

The ICE then may accept the complaint and make a recommendation or reject the complaint for one of the ten reasons listed in § DOC 310.10(6) within 30 days from the date of receipt. Wis. Admin. Code § DOC 310.10 (2), (9). Reasons for rejection include where "[t]he inmate submitted the complaint beyond 14 days after the date of the occurrence giving rise to the complaint and provides no good cause or the ICE to extend the time limits." Wis. Admin. Code § DOC 310.10(6)(e). If the ICE rejects the complaint, an inmate may appeal the rejection to the appropriate reviewing authority "who shall only review the basis for the rejection of the complaint." Wis. Admin. Code § DOC 310.10(10). "An inmate may appeal the reviewing authority decision within 14 days after the date of the decision . . . with the [Corrections Complaint Examiner] (CCE)." Wis. Admin Code § DOC 310.12(1). If a complaint has validly been rejected, the CCE shall return the complaint. Wis. Admin. Code § DOC 310.12(4)(b).

*Johnson's Attempt to Exhaust her Administrative Remedies*

Upon arriving at Taycheedah, it is undisputed that Johnson participated in new inmate orientation, where the entire inmate complaint process was explained, and received an inmate handbook, which also explained the process. (Docket # 37, ¶¶ 14-18; Docket # 53, ¶¶ 14-20.) The relevant inmate complaint, TCI-2018-23522, was received by the ICE on November 9, 2018. (Docket # 38-2 at 8.) In the complaint, Johnson stated she "was not

3

provided the proper medical attention for a knee injury that [she] sustained from failing out of a top bunk on the second floor of the Max Building on 10-7-14." (*Id.*) She also explicitly stated in the complaint that as a result of Baumhardt's delay, she now has bone degeneration and she has "to have a medical procedure every 4 months to a year" (*Id.* at 9.)

The complaint was rejected because it was filed outside the permitted 14-day window allowed under Wis. Admin. Code § DOC 310.07(2). (Docket # 37, ¶ 10.) Johnson then appealed the rejection twice. (*Id.*, ¶ 11.) These appeals were returned to her along with letters explaining that her appeals would not be accepted because the CCE cannot review a rejected complaint. (*Id.*) It is undisputed that Johnson did not file any other inmate complaints related to her injury in October 2014. (*Id.*, ¶ 12, Docket # 50 at 2.)

Johnson does not dispute that she filed her inmate complaint over four years after the incident occurred. (Docket # 50 at 2.) She explains, however, that there was no reason to file an inmate complaint until after she learned that she "was going to continue a very painful process with my knee and would experience very painful medical treatments in the future." (Docket # 45, ¶ 12.) While Johnson does not provide details on exactly when or how she learned about these long-term effects from her knee injury, it is reasonable to infer that she learned about them shortly before filing her inmate complaint in November 2018.

Johnson further explains that until she learned about the long-term effects, she had considered the situation resolved. (Docket # 53, ¶ 10.) On October 21, 2014, approximately three weeks after her injury, Johnson spoke with Dr. Negratti. (Docket # 50 at 1.) Dr. Negratti then intervened on Johnson's behalf and on October 22, 2014, got Johnson the medical attention she needed. (*Id.*) Johnson states she considered her discussion with Dr. Negratti as fulfilling the requirement in the DOC regulations that mandates that inmates

4

must first attempt to resolve their issue informally before filing an inmate complaint. (Docket # 53, ¶¶ 10, 15-16.) Johnson also states that from the time when she spoke with Dr. Negratti until she learned about the long-term effects of her knee injury, she "had no complaints of the medical assistance that was received for the left knee injury." (Docket # 50 at 2.)

## SUMMARY JUDGMENT

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the

record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Baumhardt moves for summary judgment on the ground that Johnson did not exhaust her claim. Baumhardt argues that Johnson did not file an offender complaint related to the underlying incident in her complaint until more than four years after the incident.

*1. The Exhaustion Standard*

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the

6

prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). An inmate can show that a grievance process may be unavailable where "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)).

In addition to the three generally-accepted instances where grievances are considered "unavailable" listed above, the Seventh Circuit has postulated a potential fourth instance where administrative remedies may be unavailable. In *White v. Bukowski*, 800 F.3d 392, 396 (7th Cir. 2015), the court held that where a plaintiff had "no opportunity to grieve that delay [in medical care] until after the harm done by it was complete and could not be undone by the defendants," a plaintiff was not required to use the grievance process and exhaust her administrative remedies as a prerequisite to filing suit. "In short, if one has no remedy, one has no duty to exhaust remedies." *Id.* at 395. The plaintiff in *White* did not discover that the prenatal care she received was inadequate and harmful to her baby until after she gave birth, by which time, additional prenatal care would have no impact. *Id.* at 395. The court reasoned that the purpose of filing a grievance "is to obtain a change of some sort—to obtain better medical care for example," and that the plaintiff would have gained nothing

7

from filing a grievance, so there was no point in requiring her to filing a grievance before filing suit. *Id.* at 394-95. To illustrate its point, the *White* court highlighted an example given in *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 538 (7th Cir. 1999):

> Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy', and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust.

*White*, 800 F.3d at 395. In other words, a plaintiff need not exhaust if there is literally no remedy available within the grievance process.

*2. Application to this Case*

*White* applies here. Leaving aside the fact that Johnson filed a grievance, by the time she discovered the damage she sustained, there was nothing that could have been done administratively to remedy the situation. As in *Perez*, Johnson's injury healed (though poorly), her medical needs are being taken care of, and monetary damages are the only remedy still available to her. Additionally, other courts throughout the Seventh Circuit have held that administrative remedies were unavailable where permanent damage from delay in treatment had occurred and by the time the permanence was discovered, there was nothing the defendants could do to remedy the situation outside of monetary damages. *See Vela v. Indiana Dept. of Corr.*, No. 16-cv-51, 2018 WL 992664 (N.D. Ind. Feb. 20, 2018) (holding that a plaintiff's administrative remedies were unavailable when he learned that he was paralyzed due to a delay in medical care because the injury was permanent and a grievance would be ineffective); *Johnson v. U.S.*, No. 14-C-10461, 2016 WL 7440270 (N.D. Ill. Dec. 27, 2016) (holding that where a prisoner plaintiff's care had been delayed and he later discovered facial fractures, he could file a lawsuit without filing a grievance); *Pollard v. Dart*,

8

No. 15-CV-4638, 2016 WL 5404978 (N.D. Ill. Sept. 28, 2016) (holding that where a delay in treatment of a bone growth lead to a complete loss of a prisoner plaintiff's hand, plaintiff was not required to exhaust administrative remedies before filing suit).

However, even if there was some other remedy available, the defendant was put on notice of the issue that ultimately led to Johnson's lawsuit. Johnson filed a grievance when she learned about her permanent damage and explicitly stated in her inmate complaint that she had recently learned of the long-term effects, described the long-term effects, and asserted that she believed them to be a result of Baumhardt's delay. Had the ICE read her complaint with a more careful eye, he or she would have realized that Johnson was not grieving the October 2014 incident *per se* but was grieving the permanent damage it caused that she recently learned about. Arguably, the grievance should not have been rejected as untimely but instead investigated.

Regardless, under *White*, considering the facts in a light most favorable to Johnson, she had no available administrative remedy to exhaust. Thus, she did not need to file a grievance prior to filing her suit. As such, I will deny Baumhardt's motion for summary judgment on exhaustion grounds. I will issue an amended scheduling order at later date resetting the discovery and dispositive motion deadlines.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that that the defendants' motion for summary judgment on exhaustion grounds (Docket # 29) is **DENIED**. The court will issue a separate amended scheduling order resetting the deadlines for discovery and dispositive motions at a later date.

9

Dated at Milwaukee, Wisconsin this 4th day of August, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge